**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KRIS B. HERMANCE and R. CHRISTOPHER HERMANCE, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF RONALD E. HERMANCE, JR., <br><br> Plaintiffs, <br><br> v. <br><br> M&T BANK CORPORATION and WILMINGTON TRUST CORPORATION, <br><br> Defendants. | Civil Action No: 17-10552-SDW-SCM <br><br> **OPINION** <br><br><br> May 16, 2018 |

**WIGENTON**, District Judge.

Before this Court is Defendant M&T Bank Corporation ("M&T") and Wilmington Trust Corporation's ("WTC") (collectively, "Defendants") Motion to Dismiss Plaintiff Kris B. Hermance and R. Christopher Hermance's ("Plaintiffs") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Motion to Dismiss is **DENIED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Prior to his death, Ronald E. Hermance, Jr. ("Mr. Hermance") was an executive of Hudson City Bankcorp, Inc. ("HCB") and Hudson City Savings Bank ("HCSB") (collectively, "Hudson").

(Compl. ¶¶ 1-2, 15.)[1] During his lengthy career at Hudson, Mr. Hermance entered into multiple employment agreements, the last of which was signed on December 31, 2008 ("2008 Agreement"). (*Id.* ¶¶ 17-21.) The 2008 Agreement provided, in relevant part, that if Mr. Hermance's employment terminated due to his death "within one (1) year after the occurrence of a Pending Change of Control and if a Change of Control occurs within two (2) years after such termination of employment" that his estate would be entitled to certain payments ("Estate Payments").[2] (*Id.* ¶¶ 31, 34.) A "Pending Change of Control" is defined as "the signing of a definitive agreement for a transaction which, if consummated, would result in a Change of Control."[3] (*Id.* ¶ 32.) The term "a definitive agreement," however, is not defined.

On August 27, 2012, HCB agreed to merge with WTC (the 'Merger Agreement')."[4] (*Id.* ¶ 41.) The Merger Agreement required M&T, as WTC's parent corporation, to "honor all obligations to current and former employees of Hudson and its subsidiaries . . . including all employment, change of control or severance agreements entered into by Hudson or its

---

[1] At all relevant times, HCB was the parent of HCSB. (Compl. ¶ 2.)

[2] This additional compensation is calculated largely on Mr. Hermance's prior salary, bonuses and pension benefits. (Compl. ¶¶ 63-73.) The amount of those payments is in dispute, but is irrelevant to the present motion.

[3] A "Change of Control" is defined as any of a number of events including, but not limited to, "the consummation of a reorganization, merger or consolidation of the Company with one or more other persons," "the acquisition of all or substantially all of the assets of the Company," and "a complete liquidation or dissolution of the Company." (Dkt. No. 16-2 Ex. D at § 15.)

[4] Although generally a court may only consider the contents of the complaint on a 12(b)(6) motion to dismiss, the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion" to one for summary judgment. *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted, emphasis in original). Here, the Complaint references and relies on the 2008 Agreement, the Merger Agreement and the amendments to that agreement. Therefore, this Court will consider those documents.

subsidiaries." (*Id.* ¶¶ 12, 43.)  Although the merger was intended to be finalized within a year,[5] (*id.* ¶ 45), regulatory issues delayed the closing, forcing HCB and M&T to amend the Merger Agreement on April 13, 2013, ("Amendment No. 1"), in order to extend the merger deadline to January 31, 2014.  (*Id.* ¶¶ 46-47.)  On December 16, 2013, when those issues were not resolved, HCB and M&T extended the closing date to December 31, 2014 ("Amendment No. 2").[6]  (*Id.* ¶¶ 51-52.)  The parties extended the merger deadline twice more before the merger closed on October 30, 2015, just over a year after Mr. Hermance's death on September 11, 2014.  (*Id.* ¶ 55.)

On November 1, 2017, Plaintiffs filed a one-count Complaint in this Court for breach of contract, alleging that Defendants failed to make the Estate Payments required by the 2008 Agreement.  (Dkt. No. 1.)  Defendants subsequently moved to dismiss.  (Dkt. No. 16.)

## II.     LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

---

[5] The Merger Agreement provided that should the merger not be consummated by August 27, 2013, either party could terminate the merger "unless the failure to meet that closing deadline resulted from the failure of the party seeking to terminate to meet its contractual obligations set forth in the Merger Agreement."  (Compl. ¶ 45.)

[6] Amendment No. 2 also changed the definition of the term "Burdensome Condition" and gave HCB additional termination rights if M&T could not resolve its regulatory issues.  (Dkt. Nos. 16-1 at 8, 16-9 §§ 2, 3.)

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

**III. DISCUSSION**

In order to adequately state a claim for breach of contract under New Jersey law, a plaintiff must allege: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)); *see also Mid-American Salt, LLC v. Morris County Cooperative Pricing Council*, Civ. No. 17-4262, 2018 WL 999675, at *3 (D.N.J. Feb. 20, 2018); *Riachi v. Prometheus Grp.*, Civ. No. 17–811, 2017 WL 2438838, at *2 (D.N.J. June 6, 2017). Because there is no dispute regarding the first and third elements of the analysis, this Court need

only address whether Defendants' decision not to make the Estate Payments is a breach of their obligations pursuant to the 2008 Agreement.

Under the 2008 Agreement, Plaintiffs are entitled to the Estate Payments only if Mr. Hermance's employment terminated due to his death "within one (1) year after the occurrence of a Pending Change of Control *and* if a Change of Control occurs within two (2) years after such termination of employment." (Compl. ¶¶ 31, 34 (emphasis added).) The parties agree that the merger is a change of control under the 2008 Agreement and that the merger itself occurred within two years of Mr. Hermance's death. The only question before this Court, therefore, is whether Mr. Hermance died within a year "after the occurrence of a Pending Change of Control" which is defined in the 2008 Agreement as "the signing of **a definitive agreement** for a transaction which, if consummated, would result in a Change of Control." (*Id.* ¶ 32 (emphasis added); *see also* Dkt. Nos. 16-1 at 13 ("the only issue for the Court to decide is whether Amendment No. 2 was 'a definitive agreement for the Merger'"), 19 at 1 ("the parties do agree that resolution of the dispute turns on the contractual interpretation of a single clause – specifically, whether Amendment No. 2 . . . constitutes 'a definitive agreement'").)

Because the 2008 Agreement does not define "a definitive agreement," this Court must endeavor to determine the term's "plain and ordinary meaning." *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 171 N.J. 378, 396 (2002). Defendants argue that the word "definitive" has only one meaning: "to supply a final answer, solution, or evaluation and to end an unsettled, unresolved condition." (Dkt. No. 16-1 at 13 (citing, *inter alia*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 592 (1986)).) Defendants contend that the phrase "a definitive agreement," therefore, requires finality and must be limited to "a final written agreement specifying the terms for the Merger." (Dkt. No. 16-1 at 13.) Defendants' position is that only the Merger Agreement, which

5

they assert "specifies the final, agreed-upon and binding terms for" the merger is such "a definitive agreement." (*Id.* at 14.) In essence, Defendants argue that the amendments to the Merger Agreement do not change its essential terms, only its closing date, and therefore, the Merger Agreement remains the operative and "definitive" agreement for the transaction.

Plaintiffs, in contrast, argue that the plain meaning of "definitive" also includes "serving to define or specify precisely," (Dkt. 19 at 14), and that the use of the indefinite article "a" rather than the definite article "the" allows for the existence of multiple agreements that may progressively specify the terms of the merger.[7] To that end, Plaintiffs contend that Amendment No. 2, which sets forth the deadline by which either party could terminate the deal and HCB's termination rights, is one such agreement. Plaintiffs further note that upon the adoption of Amendment No. 2, the parties agreed that "any reference to the [Merger] Agreement shall be deemed a reference to the [Merger] Agreement as amended." (Dkt. No. 19-1 Ex. J.) As a result, Plaintiffs assert that Amendment No. 2 is "a definitive agreement" under the 2008 Agreement.[8]

Without any information about the parties' intent regarding the term "a definitive agreement," or their intent regarding the purpose of Amendment No. 2, this Court is faced with two plausible alternative interpretations of what constitutes "a definitive agreement." Because this

---

[7] The definite article "the" is used to refer to a specific object or person, while the indefinite article "a" refers to a non-specific object or person, such as a member of a group.

[8] Plaintiffs also look to the United States Securities and Exchange Commission's ("SEC") definition of "a material definitive agreement" to bolster their argument. (*See* Dkt. No. 19 at 2-3, 6, 8, 14, 20-21, Compl. ¶¶ 35-40.) The SEC defines "material definitive agreement" as an agreement "that provides for obligations that are material to and enforceable against the registrant, or rights that are material to the registrant and enforceable by the registrant against one or more other parties to the agreement, in each case whether or not subject to conditions." (Compl. ¶ 37.) Plaintiffs argue that because this definition does not require "finality," it is consistent with their interpretation of "a definitive agreement." Although the SEC's definition may be pertinent, it is premature for this Court to weigh the effect of such a definition in the absence of fact discovery to clarify how, if at all, the parties understood that definition to relate to the 2008 agreement.

Court is required on a motion to dismiss to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief," *Phillips*, 515 F.3d at 231, it cannot grant Defendant's motion. At this stage of the proceedings, Plaintiffs have sufficiently alleged that Amendment No. 2 constitutes "a definitive agreement" that was signed within a year of Mr. Hermance's death.[9] Defendant's motion will be denied.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**. An appropriate order follows.

                                              ___/s/ Susan D. Wigenton_____
                                              **SUSAN D. WIGENTON, U.S.D.J.**


Orig:        Clerk
cc:          Steven C. Mannion, U.S.M.J.
                Parties

---

[9] This Court takes no position on the likelihood of Plaintiffs' success on the merits of their claims at summary judgment.